UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 06-CV-5982 (JFB)
_____

JEROME JONES,

Petitioner,

VERSUS

ISRAEL RIVERA,

Respondent.

_____

MEMORANDUM AND ORDER
May 7, 2008
_____

JOSEPH F. BIANCO, District Judge:

Jerome Jones (hereinafter, "Jones" or "petitioner") petitions this Court for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, to vacate his conviction entered on October 30, 1998 in the County Court of the State of New York, County of Suffolk (the "trial court"), for criminal possession of a weapon in the third degree. Petitioner was sentenced, as a Persistent Violent Felony Offender, to fifteen years to life in prison.

Jones challenges his conviction on three evidentiary grounds. Specifically, petitioner asserts that: (1) the trial court failed to adhere to a pre-trial ruling relating to the admissibility of petitioner's prior convictions pursuant to *People v. Sandoval*, 34 N.Y.2d 371 (N.Y. 1974); (2) the prosecutor attempted several times to introduce evidence of an uncharged crime; and (3) the trial court permitted the prosecutor to introduce certain hearsay evidence. As a fourth ground for *habeas* relief, petitioner argues that the trial court erred in declining to issue a missing witness charge. For the reasons set forth below, the petition is denied in its entirety.

I. BACKGROUND

A. The Underlying Facts

The Court has adduced the facts below from the instant petition and the state court record in this case.

On June 18, 1997, Suffolk County Police Officers John Sheridan ("Sheridan") and Matthew J. Piotrowski ("Piotrowski") were on patrol in Wyandanch, New York. (Trial Transcript ("T.")285.) Sheridan and Piotrowski observed a speeding car. (T.290.) When the officers pulled up behind the car, a

man emerged and pointed towards the 21-22 Lake Drive area of Wyandanch. (T.292.) Specifically, the man was "pointing that there's shooting down there, they have a gun." (T.292.)

Sheridan and Piotrowski proceeded to the 21-22 Lake Drive area. (T.293.) Upon their arrival, they observed a crowd of approximately twenty to thirty people in the street. (T.293.) Specifically,"[t]he crowd on the left-hand side of the road was saying that, 'he has a gun, he has a gun.'. . . ." (T.294.) The crowd was also pointing, in particular, towards 22 Lake Drive. (T.295.)

The officers then observed Jones running toward them. (T.295.) The officers pursued him on foot. (T.296.) Jones ran to the door of 22 Lake Drive and kicked and punched the closed door with his left hand. Both Sheridan and Piotrowski observed a dark colored semi-automatic handgun in Jones's right hand. (T.297, 431.) At the time of this observation, the officers were approximately two or three steps behind Jones. (T.298.)

The door opened and Jones went inside. (T.298.) Piotrowski and Sheridan followed petitioner into the house. (T.299.) At that time, Piotrowski apprehended several women in the living room and Sheridan followed petitioner to the back of the house. (T.300, 433) Sheridan observed Jones throw the gun down in a bedroom. (T.301, 303.) Along with Police Officer Raul Mercado ("Mercado"), who by that time had also arrived at 22 Lake Drive in response to a disturbance call (T.483), Sheridan apprehended Jones. (T.302-03.)

Subsequently, Sheridan and Mercado found the gun under a bed – in the same bedroom where Sheridan had observed Jones throw the gun. (T.307-08.) During his entire pursuit of Jones, Sheridan never lost sight of him. (T.403.)

B. Procedural History

On May 18, 1998, a jury found Jones guilty of criminal possession of a weapon in the third degree. On October 30, 1998, Jones was sentenced to fifteen years to life in prison. On April 25, 2005, Jones appealed his conviction to the Appellate Division, which affirmed the conviction on October 14, 2005. On December 28, 2005, the Court of Appeals denied Jones leave to appeal the Appellate Division's decision.

Jones submitted the instant petition on November 2, 2006. Respondent submitted his opposition on April 26, 2007.

II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of *habeas corpus*, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams*, 529 U.S. at 413; *see also Earley*, 451 F.3d at 74.

In particular, AEDPA establishes a deferential standard of review: "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

III. DISCUSSION

A. Procedural Bar

As a threshold matter, respondent argues that Jones's *Sandoval*-based claim is procedurally barred from *habeas* review by the Court. The Court agrees.

The Supreme Court has held that claims underlying a *habeas* petition may be procedurally barred from *habeas* review if they were decided at the state level on adequate and independent procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

In particular, the procedural bar applies when a state court's decision contains a "plain statement" that it is relying on an appropriate state law to deny a claim. *Michigan v. Long*, 463 U.S. 1032, 1042 (1983). The Supreme Court has consistently applied the *Long* rule since it was established. *See Harris v. Reed*, 489 U.S. 255, 261 (1989); *see also Ohio v. Robinette,* 519 U.S. 33, 37 (1996); *Pennsylvania v. Labron*, 518 U.S. 938, 941

3

(1996); *Arizona v. Evans*, 514 U.S. 1, 7 (1995); *Coleman*, 501 U.S. at 723; *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). The rule applies both to substantive and procedural state laws. *See Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985) (applying the *Long* "plain statement" rule to a procedural state law). Further, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Id.*

Here, with respect to Jones's *Sandoval* claim, the Appellate Division held:

> The defendant contends that he was denied a fair trial by the trial court's questioning of the police witness, whereby testimony was elicited that the officer had prior dealings with the defendant. Upon the defense counsel's objection, the trial court immediately stopped its questioning. Thereafter, the defendant chose not to move for a mistrial and declined the trial court's offer for curative instructions to the jury. Accordingly, the issue was not preserved for appellate review.

*Jones*, 808 N.Y.S.2d at 84.

To support this conclusion, the Appellate Division cited *People v. Etheridge*, in which the Appellate Division similarly found an issue unpreserved where defense counsel requested neither curative instructions nor a mistrial. 554 N.Y.S.2d 731, 731-21 (App. Div. 1990); *see also People v. Muniz*, 844 N.Y.S.2d 396, 397 (App. Div. 2007) ("Since the defendant neither requested further curative instructions nor moved for a mistrial, his present contention is unpreserved for appellate review.") (collecting cases); *Friedman v. Marcus*, 821 N.Y.S.2d 136, 137 (App. Div. 2006) ("The plaintiffs' attorney never objected to those comments and never sought a curative instruction or a mistrial. Consequently, this contention is unpreserved for appellate review. . . .") (citations omitted) (collecting cases). Thus, in disposing of Jones's *Sandoval* claim, the Appellate Division provided a plain statement that this claim was unpreserved for appellate review under established New York law. This Court, therefore, finds that this claim is procedurally barred from federal *habeas* review.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 749-50 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases – for example, where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495 (1986). Here, petitioner has not provided a satisfactory explanation for his failure to raise the *Sandoval* claim in state court, nor has he demonstrated that a fundamental miscarriage of justice would occur if these claims were not reviewed by the *habeas* court. Not only is petitioner's application devoid of any claim of actual innocence, but the evidence presented at trial clearly established petitioner's guilt beyond a reasonable doubt. Accordingly, petitioner's claim is deemed to be exhausted, but is procedurally barred from review by this Court. In any event, assuming *arguendo* that the

4

*Sandovol* claim is reviewable, the claim is substantively without merit, as set forth *infra*.

B. Evidentiary Rulings

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983); *see generally Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law.") (citations omitted). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must "show that the error deprived her of a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'") (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (internal quotation marks omitted)). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks omitted)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (holding that evidence must be "crucial, critical, highly significant") (internal quotation marks omitted). Moreover, the court "must review the erroneously admitted evidence 'in light of the entire record before the jury.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d at 181 (internal quotation marks omitted)). In making this due process determination, the Court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *Wade v. Mantello*, 333 F.3d 51, 59 n.7 (2d Cir. 2003); *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001). As set forth below, the Court has reviewed each of the trial court's evidentiary rulings to which Jones objects under this two-part test and concludes that none of these rulings, either individually or collectively, warrants *habeas* relief.

(1) Alleged *Sandoval* Violation

Petitioner objects to the trial court's question to a police witness regarding prior police knowledge of the petitioner. The Court disagrees with Jones's argument that the trial court erred in asking such question by failing to adhere to a ruling the trial court itself made pursuant to *Sandoval*. In any event, this alleged error does not provide a basis for *habeas* relief because it did not impact the fundamental fairness of petitioner's trial.

a. The Record

As the Second Circuit has noted, "'[i]n New York state courts a defendant may request a preliminary hearing, known as a *Sandoval* hearing, to determine whether, if he

elects to testify, his prior criminal record may be used to impeach his credibility.'" *Greiner v. Wells*, 417 F.3d 305, 310 n.1 (2d Cir. 2005) (quoting *Norde v. Keane*, 294 F.3d 401, n.1 (2d Cir. 2002)). Here, on May 11, 1998, the trial court held such a *Sandoval* hearing and ruled that certain of Jones's prior convictions could be used to impeach his credibility if he testified. (*See* T.2-20.)

The following dialogue subsequently took place during Officer Mercado's direct examination by the prosecutor:[1]

> Q: And the person that you cuffed earlier, could you describe him?
> A: He was a little over six foot, about six-two. Well-built. Looks like he lifts weights. And with dreadlocks.
> Q: And the person with dreadlocks, was that the same person you saw outside earlier?
> A: Yes, sir.
> Q: And do you see that person in the courtroom today?
> A: Yes, sir.
> Q: Please point him out, identify an article of clothing.
> A: Right now?
> Q: Yes.
> A: Jerome Jones. Black blazer.
> Q: May the record reflect the witness has picked out the defendant.
> Defense counsel: So acknowledged.
> The Court: Record so reflects. Did you know Mr. Jones before this dealing in question?
> A: Yes, sir. Had plenty of dealings with him, Mr. Jones.
> Defense counsel: Objection, your Honor.
> The Court: But you knew him before this time. Okay.

(T.489-90.)

After the government conducted its redirect examination of Mercado, Jones's counsel renewed his objection to the Court's question of the witness. (T.523.) The trial court responded:

> He didn't say – he arrested him on prior occasions. Or anything of that nature. . . throughout the entire testimony of the trial here, both sides, there was a question of identity and this officer, and I asked it at the time just for clarification, if the officer knew the defendant, and he didn't say he arrested him on prior occasions or had prior difficulties with him or allowed any words to the effect that he was a problem or he had made any arrests or had taken him into custody, along those lines.

(T.523-24.)

Defense counsel then conferred with Jones regarding whether they should request a mistrial, but decided to proceed. (T.525.) In addition, in response to the trial court's

---

[1] The names of the lawyers in the quoted colloquies from the trial transcript have been omitted for convenience of the reader.

6

inquiry, defense counsel stated that Jones did not want the trial court to issue a curative instruction to the jury. (T.525.) Petitioner did not testify on his own behalf at trial.

b. Analysis

As a threshold matter, "[i]t is well settled that a [habeas] petitioner's failure to testify [at trial] is fatal to any claims of constitutional deprivation arising out of a *Sandoval* type ruling because, in the absence of such testimony the Court has no adequate non-speculative basis upon which to assess the merits of the claim." *Peterson v. LeFevre*, 753 F. Supp. 518, 521 (S.D.N.Y. 1991), *aff'd mem.*, 940 F.2d 649 (2d Cir. 1991); *see Luce v. United States*, 469 U.S. 38, 43 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify.").

"In other words, habeas relief is never warranted if the petitioner decided not to testify, regardless of the fact that the trial court's *Sandoval* ruling may have motivated petitioner's decision." *McKenzie v. Poole*, 03-CV-4253 (JG), 2004 U.S. Dist. LEXIS 23598, at *15 (E.D.N.Y. Nov. 23, 2004); *see also Oslan v. Parrott*, No. 01 Civ. 6551, 2004 U.S. Dist. LEXIS 11681, at *6-*7 (S.D.N.Y. June 22, 2004) ("Petitioner chose not to testify at trial. Therefore, petitioner's claim based on the trial court's *Sandoval* ruling does not raise a constitutional issue cognizable on habeas corpus review."); *Delgado v. Duncan*, No. 02 Civ. 4929, 2003 U.S. Dist. LEXIS 24123, at *12 (E.D.N.Y. Nov. 13, 2003) ("Because petitioner did not testify at trial, this claim [regarding the *Sandoval* ruling] is not cognizable on habeas review."). Here, petitioner elected not to testify at trial and, thus, his *Sandoval* claim cannot provide a basis for *habeas* relief.

In his written submissions, petitioner's counsel acknowledges that "[g]enerally, a habeas court cannot review a *Sandoval* ruling unless the Petitioner testified at trial and was cross-examined about the prior bad acts or convictions." (Petitioner's Letter to the Court, dated October 20, 2006 (hereinafter, "Petitioner's October 20 Letter"), at 4.) Petitioner attempts to transform this state law issue into a cognizable *habeas* claim by arguing that the issue in the instant petition is not a challenge to the *Sandoval* ruling itself, but rather the alleged erroneous admission of testimony regarding petitioner's prior contact with the police purportedly in violation of the court's own *Sandoval* ruling. However, even assuming *arguendo* that this claim is analyzed on the merits (as requested by petitioner) as a cognizable *habeas* claim stemming from the alleged erroneous admission of prejudicial testimony, it still fails to warrant *habeas* relief for the reasons discussed below.

First, the Court finds no basis to conclude that the trial court's questioning Mercado violated New York State law. In particular, as the trial court clearly explained in response to defense counsel's objection, the identity of the subject the police officers were pursuing was a central issue at Jones's trial.[2] Mercado's recognizing Jones from "prior dealings" was,

---

[2] Specifically, as Jones explains in his petition, the defense's argument at trial was that the gun belonged not to petitioner but to Gary Looney ("Looney"), a parolee who lived at 22 Lake Drive. (Petitioner's Mem. at 7.) Thus, as the prosecutor stated during his closing argument: "[T]his is an identification case. Was the defendant outside; did he have a handgun. Remember the testimony from the police officers, Police Officer Piotrowski and Police Officer Mercado. They knew the defendant. And they recognized him. That's the issue." (T.724.)

7

therefore, especially relevant under the circumstances of this case. Moreover, as the trial court pointed out, Mercado did not reveal any prejudicial facts relating to these "prior dealings," such as whether they involved an arrest or conviction. Thus, the trial court's questions did not implicate – much less violate – the earlier *Sandoval* ruling. *See Manning v. Walker*, No. 99-CV-5747, 2001 U.S. Dist. LEXIS 109, at *7 (E.D.N.Y. Jan. 3, 2001) ("First, Robinson's identification of Manning was plainly a disputed issue in the case. Given the brevity of Robinson's exposure to Manning at the time of the crime, the fact that she had had numerous prior encounters with him was relevant and quite probative of her ability to identify him. At the *Sandoval/Molineaux* hearing, Manning's counsel was given the opportunity to take this issue – and the disputed evidence – out of the case by stipulating to Manning's presence at Robinson's house on the night in question. Having exercised his right to refuse such a stipulation, it was not error to permit the prosecution to prove the basis of Robinson's ability to identify Manning."); *People v. Guerra*, 571 N.Y.S.2d 279, 279 (App. Div. 1991) (finding that trial judge did not violate own *Sandoval* ruling by admitting evidence of prior conviction where defendant could not show prejudice). In short, the Court finds that the trial court's questioning Mercado did not violate New York State law because this line of questioning was relevant on the issue of identification and did not unfairly prejudice petitioner.

Second, even if the limited testimony regarding prior police contact with petitioner was erroneously admitted, such error did not deprive petitioner of his constitutional right to a fundamentally fair trial. In particular, the evidence of Jones's guilt in this case was overwhelming and included, *inter alia*: (1) Sheridan's and Pietrowski's testimony that, in pursuing Jones, they observed him at extremely close range carrying a gun; and (2) Sheridan's testimony that he never lost sight of Jones during the entire pursuit, up to and including petitioner's throwing the gun down in the bedroom where it was promptly recovered. This testimony was further corroborated by Officer Mercado who also chased petitioner and followed Officers Sheridan and Piotrowski into the house on Lake Drive. Finally, a forensic scientist at the Suffolk County Crime Law testified that the weapon recovered was an operative 9-mm Smith and Wesson model.

In light of this overwhelming evidence of petitioner's guilt, the Court concludes that the trial court afforded petitioner a fundamentally fair trial under the Constitution. *See Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990), *cert. denied* 501 U.S. 1221 (1991) ("[C]lear evidence of guilt demonstrates that [petitioner] was not prejudiced."); *see also Harris v. Burge*, No. 04 Civ. 5066, 2008 U.S. Dist. LEXIS 22981, at *22 (S.D.N.Y. Mar. 25, 2008) ("A federal habeas court may correct an error of state law that rises to the level of a constitutional violation, but even such an error will merit habeas corpus relief only if it had a 'substantial and injurious effect or influence in determining the jury's verdict.'") (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *Santiago v. Rivera*, No. 07 Civ. 0785, 2007 U.S. Dist. LEXIS 91436, at *10 (E.D.N.Y. Dec. 12, 2007) ("If there was an error in admitting the testimony, it was not so pervasive that it affected the fundamental fairness of petitioner's trial."). Accordingly, even if there were an error in the admission of this limited testimony under New York State law, it does not provide a basis for *habeas* relief because of its lack of prejudice to petitioner, especially given the overwhelming

evidence demonstrating his guilt.

(2) Uncharged Crime Claim

Petitioner also argues that he was deprived of his right to a fair trial because the trial court allowed the prosecutor to elicit testimony regarding a separate, uncharged crime being investigated by the police at the scene of the arrest – namely, a knifing. As discussed in detail below, the record demonstrates the following: (1) there was no defense objection to the first reference to the recovery of the knife in the kitchen by police; (2) the court stopped the prosecutor's attempt to make further references to the knife when the defense objected to a subsequent reference; (3) defense counsel then elicited additional testimony regarding the assault investigation during his direct testimony of a police officer called as a defense witness; and (4) the Court gave a curative instruction to the jury to disregard testimony if an objection was sustained. In the context of the entire trial, the very brief reference to the recovery of a knife and separate investigation of an assault at the scene does not provide a basis for *habeas* relief.

a. The Record

Set forth below are those portions of testimony with which petitioner takes issue because they relate to the uncharged knifing, as well as the various actions taken by the trial court with respect to this testimony.

First, the following exchange took place during the prosecutor's direct examination of Officer Sheridan:

> Q: Did there come a time when you entered the kitchen?
> A: Yes, I did.
> Q: What, if anything, occurred when you entered the kitchen?
> A: When we went into the kitchen I smelled something really bad, so I looked into the garbage pail and observed a knife.
> Q: Describe the knife.
> A: It was a folding-type of knife and it had what appeared to be blood on it.
> Q: And what, if anything, did you do with regard to that knife?
> A: I just left it there, too, and informed my supervisor.

(T.309.) Jones's counsel did not object to this line of questioning at trial.[3]

Second, petitioner points to the following statement during the prosecutor's direct examination of Pietrowski: "Officer Sheridan was in the kitchen and he looked into the garbage can and found–." (T.439.) Pietrowski was cut off when defense counsel objected on the grounds of relevance. (T.439.)

Upon this objection, the following exchange took place among the trial court and counsel outside the presence of the jury:

> The Court: What's the relevancy?
> Prosecutor: Judge –
> The Court: Is there relevancy?
> Prosecutor: Yes, judge.
> The Court: All right. What's

---

[3] Even though any claim based on this particular portion of testimony is thus unpreserved for *habeas* review, the Court considers this testimony on the merits, as set forth *infra*.

9

the relevancy of him searching the garbage can in the kitchen?
Prosecutor: Judge, they did search the garbage can. They found a knife in the garbage can.
Defense Counsel: What does that have to do?
Prosecutor: This is all one big crime scene. We have had individuals in that house who weren't necessarily forthcoming with the police because they were involved in criminal activity, as well, Judge. We're going to have a crime scene detective come in who processed that scene, got there, sees the knife, how he paints the full picture.
The Court: What full picture?
Prosecutor: Full picture of the crime scene.
The Court: Nobody – you got somebody in the house.
Defense Counsel: That's highly prejudicial.
The Court: That's highly inflammatory.
Prosecutor: There's no implication that he had anything to do with the knife that is in the house he went into.
The Court: What is the purpose of introducing it for?
Prosecutor: Just to paint a picture.
The Court: Don't paint any picture. Just go on the weapon that he's charged with, his actions and conduct. What's the crime scene –
Prosecutor: We are going to with the crime scene officer. He has a whole log of his activities.
The Court: You get him to what he does only specific as to the gun in the bedroom, from there, okay. That's relevant to this case and this charge, criminal possession of a weapon. You have a gun; you don't have a knife.

(T.441.) The Court then told the prosecutor to "[m]ove on" and the prosecutor ceased that line of questioning. (T.441.)

Third, petitioner notes the following exchange that took place during the direct examination of Police Officer Bose ("Bose"), who processed the crime scene:

> Q: Did there come a time when you did some work in the kitchen?
> A: Yes, I did.
>
> ***
>
> Q: And then after you were done with that, what, if anything, did you do next?
> A: Well, I had two separate scenes; first scene I recovered –

(T.531.) As with Pietrowski, Bose was cut off by the court when defense counsel objected. (T.531.) In particular, the trial court instructed the prosecutor: "Let's just confine ourselves for relevant matters here." (T.531.) The prosecutor and Bose did, however, use the term "second scene" again in connection with three subsequent questions. (T.531.) The following exchange then took place among the

10

trial court and defense counsel outside the presence of the jury:

> Defense counsel: Object to any reference to first scene, second scene. Did you take pictures of the bedroom; did you take a picture of the gun. I don't have to know there's two scenes.
> Prosecutor: We're on the weapon, that's it.
> The Court: Why didn't you instruct this guy?
> Prosecutor: Judge, I did.
> The Court: What did you have to go in the kitchen for?
>
> ***
>
> The Court: You got him into the kitchen, for crying out loud. You mentioned it first.
> Prosecutor: He talked about what he did in the kitchen. I asked him what he did with the weapon.
> The Court: Where is the knife; in the kitchen.
> Prosecutor: Yes.
> The Court: Why did you ever even go into the kitchen for?
> Prosecutor: I want to ask him what he did first, just to get a time line.
> Defense Counsel: He doesn't have any personal knowledge. He just recovered a weapon.
> Prosecutor: He didn't discuss anything.
> The Court: Lay off that stuff.
> Prosecutor: I am. I am.

(T.532-34.) The prosecutor then proceeded to a different line of questioning. (T.534.)

Fourth, petitioner points to questions the prosecutor asked Detective Britelli ("Britelli"), who was also called to 22 Lake Drive on the night in question. Defense counsel had called Britelli as a hostile witness, and asked him on direct examination whether he went to 22 Lake Drive in response to shots being fired there. (T.643.) The Detective, in response to defense counsel's question, stated, "We responded for an assault 2nd degree." (T.643.) Defense counsel then impeached the witness with a report indicating that officers responded because of shots being fired. (T.643-44.) Subsequently, the prosecutor had the following exchange with Britelli on cross-examination with respect to this issue raised on direct:

> Q: And you were also asked what it was that brought you down to the scene; correct?
> A: Yes, sir.
> Q: Please tell the members of the jury what it was that brought you down to that scene.
> A: I was brought to the scene responding to an assault in the 2nd degree that had occurred.
> Q: What was that related to?
> A: That was related to a stabbing.
> Q. Where did that stabbing occur?

(T.664.) At that point, Jones's counsel objected. The trial court overruled the objection and permitted Britelli to state that the stabbing had occurred in the street in front of 22 Lake Drive. (T.664.) However, when the prosecutor attempted to continue this line of questioning, the trial court instructed the

11

prosecutor to "move on now." (T.665.)

Counsel then had the following exchange, outside the presence of the jury, with the trial court about this testimony:

> Defense Counsel: My question to Det. Britelli, he was a hostile witness, was did you go to that house, to investigate Jerome Jones' crime. My questions pertained to one case. Eliciting information on a hostile witness of evidence of another crime is so highly prejudicial and it was done, June. It's so unfair.
> The Court: But for the fact that I cut People off on your objection, then you called the detective to testify, and you led him up to the same thing, come up with that answer.

(T.676.) Defense counsel then stated that he was going to ask for a curative instruction that the jury should only consider the one charge in the case and nothing else. (T.677.) The Court responded to counsel, "That's all I'm going to ask the jury to consider. And it's this defendant, not anybody else here, and what the charge is here, but you asked the question. The jury is not stupid." (T.677.)

Finally, at the close of the trial and in response to defense counsel's request, the trial court agreed to issue a general curative instruction to the jury stating that it could not consider any "other issues or criminal issues" collateral to the particular charge Jones was facing. (T.693.) In particular, the trial court instructed the jury:

> Now, in the course of the trial, questions were asked at times as to which objections were sustained. Whether these matters seemed at any time to be trivial or important, there's no concern. They are not in the case. And you must not be influenced by them. Nor shall any inference be drawn by you with respect to any of them.

(T.761.) At the conclusion of the instructions on the law, defense counsel did not indicate that he was dissatisfied with the wording of this curative instruction.

b. Analysis

The Court has carefully reviewed the portions of testimony set forth above related to the investigation of an uncharged knifing, in the context of the entire case, and finds that it does not provide a basis for *habeas* relief.[4]

As a threshold matter, and as the exchanges set forth above clearly indicate, the trial court consistently cut off all lines of questioning relating to the stabbing and repeatedly admonished the prosecutor for his attempts to undertake such questioning. Indeed, the sole time the trial court permitted limited questioning related to the stabbing resulted from defense counsel's own line of questioning on direct examination. "Under New York law, evidence of uncharged crimes may be properly admitted when 'the defendant clearly open[s] the door to the complained-of

---

[4] In considering Jones's claim regarding testimony related to uncharged crimes, the Appellate Division held: "To the extent that this issue is preserved for appellate review, any error was harmless in light of the overwhelming evidence of guilt." *Jones*, 888 N.Y.S.2d at 84-85.

12

cross-examination by interjecting the uncharged crimes during his direct examination as an integral component of his trial strategy.'" *Crowder v. Green*, No. 05-CV-2556, 2005 U.S. Dist. LEXIS 24896, at *18-*19 (E.D.N.Y. Oct. 20. 2005) (quoting *People v. Watts*, 546 N.Y.S.2d 906, 906 (App. Div. 1989)); *see also Kanani v. Phillips*, No. 03 Civ. 2534, 2004 U.S. Dist. LEXIS 20444 (PKC)(AJP), at *61 (S.D.N.Y. Oct. 13, 2004), *adopted in its entirety*, 2005 U.S. Dist. LEXIS 22417 (S.D.N.Y. Oct. 3, 2005) ("The 'opening the door' theory extends to evidence of a defendant's prior criminal activity or bad acts. Thus, it was not error for the trial judge to have allowed this evidence."). Because the defense opened the door during Britelli's direct examination, the trial court did not err in permitting very limited cross examination on the topic of the stabbing investigation by the prosecutor.

Moreover, after careful review of the record in this case, the Court finds that the extremely limited references to the stabbing investigation were not "so extremely unfair that its admission violates fundamental conceptions of justice,'" *Dunnigan*, 137 F.3d at 125 (quoting *Dowling* 493 U.S. at 352) (internal quotation marks omitted)). First, during this brief reference to the observation of the knife and the assault investigation at 22 Lake Drive, there was absolutely no testimony that petitioner had anything to do with the knife found in the kitchen garbage or any alleged assault. In fact, as defense counsel noted in his closing argument, although petitioner ran into a bedroom at 22 Lake Drive, the police admitted that petitioner did not live there; rather, it was the home and bedroom of Gary Looney, who was on parole, and lived there with several other adults. (T.720.) Thus, there is no basis for anyone to infer that petitioner had any connection to the knife found in the kitchen, when a police officer had him in view at all times and saw him run into the bedroom with the gun. Even petitioner's counsel recognized in his submission to this Court that "no evidence linked [petitioner] to the knife." (Petitioner's October 20 Letter, at 6.) Therefore, there was no prejudice to the petitioner as a result of these brief references to a knife and an assault investigation that were not linked to petitioner in any way.

In any event, even assuming *arguendo* that some modicum of prejudice resulted from these references as claimed by petitioner because they allegedly "created an aura of criminality around the Petitioner" (Petitioner's October 20 Letter, at 6), the trial court's clear curative instruction served to wholly alleviate this prejudice. *See Watkins v. Perez*, No. 05 Civ. 477, 2007 U.S. Dist. LEXIS 33736, at *46 (S.D.N.Y. May 7, 2007) (rejecting *habeas* claim based on reference to petitioner's prior incarceration where trial court gave curative instruction because "[t]here was no significant probability that the jury would be unable to understand the court's simple, clear instruction, and in any event, the reference to petitioner's incarceration was so brief that it is unlikely that it had a 'devastating' effect on petitioner") (collecting cases); *Roldan v. Artuz*, 78 F. Supp. 2d 260, 280 (DAB)(AJP) (S.D.N.Y. 1999) ("[E]ven if the testimony amounted to inadmissible evidence of uncharged crimes, the trial court's prompt curative instructions to the jury eliminated the risk of unfair prejudice."); *see also People v. Benavides*, 792 N.Y.S.2d 138, 139 (App. Div. 2005) ("The defendant contends that during redirect examination of a prosecution witness, the prosecutor improperly elicited testimony of a prior uncharged crime by the defendant. Following this testimony, the court issued a curative instruction to the jury, striking the

13

question and answer from the record. This prompt curative action was sufficient to remedy any error.") (citations omitted).

Here, the trial court indicated to the jury that the investigation regarding the knife was not relevant to the charged crime by instructing the prosecutor, in front of the jury, in the following manner: "Let's just confine ourselves for relevant matters here." (T.531.) Similarly, after defense counsel opened the door to this issue during his direct examination of a police officer witness, the trial court allowed some brief questioning on the issue on cross-examination and then instructed the prosecutor to "move on now." Thus, these instructions to the prosecutor during these brief references to the knife clearly signaled to the jury that these references were not relevant to the charge in the case.[5] More importantly, at the conclusion of the case, the Court instructed the jury, at defense counsel's request, that any questions to which objections were sustained were of "no concern" and "[t]hey are not in the case" and "you must not be influenced by them." (T.761.) Defense counsel did not indicate that he was unsatisfied with that instruction, nor has petitioner demonstrated that the trial court's instruction was difficult to follow or that, in light of the entire record, the minor references to the knife/stabbing were devastating to petitioner. Thus, the Court has reviewed this curative instruction in the context of the entire state court record and finds that the instruction was clear, comprehensive, and effective. In sum, the Court finds that any admission of testimony relating to knife was very limited, did not prejudice petitioner and, even if potential prejudice existed, it was alleviated by the trial court's curative instruction.

Finally, the Court concludes that, even assuming *arguendo* that the instruction was not completely effective in alleviating any potential prejudice from the brief references to the observation of the knife in the kitchen and investigation of an assault, any prejudice from the admission of this limited testimony did not deprive petitioner of a fundamentally fair trial given the overwhelming evidence of guilt discussed *supra*. *See, e.g., Hogan v. West*, 448 F. Supp. 2d 496, 516 (W.D.N.Y. 2006) ("[T]he prosecution's case against [petitioner] was compelling, which further supports this Court's determination that any error relating to the victim's inadvertent mention of a prior uncharged crime was harmless."); *Malave v. McCray,* No. 00 Civ. 5982 (NRB), 2001 WL 62865, at *4 (S.D.N.Y. Jan. 23, 2001) ("Any error that may arguably have occurred [from the admission of a prior bad act by the petitioner] did not amount to an infringement upon petitioner's due process rights."). Accordingly, this claim does not provide a basis for *habeas* relief.[6]

---

[5] In addition, prior to summations, the court also made clear to the jury that "[t]here's only count 1 for your consideration as the exclusive judges of the facts in the case." (T.698.)

[6] To the extent that this claim could also be interpreted as a prosecutorial misconduct claim, the claim similarly must fail because, for the same reasons as discussed above, petitioner failed to demonstrate that the brief references to the knife in the context of the entire trial made it fundamentally unfair and a denial of due process. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 645 (1974); *see also Taus v. Senkowski,* 293 F. Supp. 2d 238, 252 (E.D.N.Y. 2003) ("A stray reference to an uncharged crime was corrected with an instruction to the jury. . . . To the degree the prosecutor was at all arguably intemperate in his comments, petitioner was not denied a fundamentally fair trial as a result. Habeas corpus relief on this claim is not warranted.").

### (3) Hearsay Claim

Jones also asks for *habeas* relief on the basis of the trial court's admission of certain hearsay testimony. In particular, petitioner objects to Sheridan's testimony describing unnamed, unidentified people – including the man in the speeding car and the people in the crowd at the 21-22 Lake Drive area – accusing Jones of possessing a gun. The Court rejects petitioner's argument.

According to the New York State Court of Appeals, hearsay testimony is admissible to show "how and why the police pursue[] and confront[]" a defendant. *People v. Tosca*, 98 N.Y.2d 660, 661 (N.Y. 2002); *see also People v. Perez*, 849 N.Y.S.2d 514, 516 (App. Div. 2008) ("The court properly admitted evidence concerning a statement to the police by a non-testifying declarant, to which defendant objected solely on state-law hearsay grounds, since this evidence was not received for its truth, but for the legitimate, nonhearsay purpose of completing the narrative of events and explaining police actions.") (citation omitted); *People v. Osorio*, 835 N.Y.S.2d 82, 84-85 (App. Div. 2007) ("The trial court properly admitted evidence of the testifying victim's statement to the arresting officer explaining why the victim was restraining defendant. This testimony was properly elicited, not for the truth of its contents, but to complete the narrative and to explain the actions of the officer."); *People v. Brown*, 554 N.Y.S.2d 492, 494-95 (App. Div. 1990) ("As to defendant's other contentions, the civilian reports to police of a man with a gun are not hearsay because they were not offered for the truth of the statements.") (citation omitted). *Cf. Lynn v. Bliden*, 443 F.3d 238, 253 (2d Cir. 2006) ("[T]he trial court may have considered that the crowd intended by its actions to point out Arriaga as the shooter. A finding of such intention would require the exclusion of the crowd's conduct as non-verbal hearsay. . . ."). Thus, the admission of the hearsay testimony in question here comported with New York State law.[7]

Further, the trial court issued the following limiting instruction, at defense counsel's request, regarding the hearsay evidence at issue:

> Ladies and gentlemen, I want to give you instruction here, as to some testimony yesterday. Officer Sheridan testified, I believe on two occasions, that he was informed by the driver of that red vehicle, and also another person in the crowd, as to a gun [sic], carrying a gun. The Court allowed that testimony in under the following grounds: Not as to the truth of the statement, but as to the fact that that statement was made and it was a state of mind, of how the officer operated after he heard that statement, in the manner that he did, in the performance of his duties as a police officer. All right. It's not offered as to the truth, but as to the state of mind of Officer Sheridan and the way he responded and reacted after he had heard that. Okay. We understand that distinction not to the truth, but to the

---

[7] In considering Jones's claim relating to hearsay evidence, the Appellate Division simply held that it was "without merit." *Jones*, 808 N.Y.S.2d at 85. As set forth *infra*, the Court agrees.

15

statement, how it affected his state of mind, the way he acted in the performance of his duties as a police officer. Okay. All right.

(T.419.)

As with the curative instruction given to the jury on the uncharged crime, this prompt and detailed limiting instruction the trial court provided regarding the hearsay testimony sufficiently clarified the limited purpose for which the jury could consider this testimony. Indeed, Jones has failed to provide any explanation – in light of the clear admissibility of the hearsay evidence under New York State law – why this limiting instruction was inadequate to cure any potential prejudice. *See United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) ("As the Supreme Court has frequently observed, the law recognizes a strong presumption that juries follow limiting instructions.") (citing *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993)); *United States v. Abner,* 782 F.3d 1120, 1126 (2d Cir. 1986) ("Such limiting instructions are an accepted part of our present trial system . . . and consequently there is a presumption that juries will follow [them]") (quotations and citations omitted). The Court therefore finds, under the circumstances of this case, that admission of this hearsay evidence did not violate New York State law.

Finally, turning to the second prong of the test set forth by the Second Circuit, the Court finds that, even assuming *arguendo* that the aforementioned evidentiary ruling violated New York State law, such error did not deprive petitioner of his constitutional right to a fundamentally fair trial. As noted *supra*, the evidence of Jones's guilt in this case was overwhelming, including the testimony of the two police officers who observed petitioner with the gun as they chased him into the house at close range, and the prompt recovery of the gun in the bedroom after an officer saw petitioner throw the gun. Thus, *habeas* relief on this hearsay claim is rejected.[8]

In sum, the Court finds that none of the evidentiary errors of which Jones complains, either individually or collectively, warrants *habeas* relief. The Court's review of the trial transcript, including the overwhelming evidence of petitioner's guilt, demonstrates that the claimed errors did not have a "substantial and injurious effect" on the verdict, *Bricht,* 507 U.S. at 637, and leads the Court to conclude "beyond a reasonable doubt that the error[s] complained of did not contribute to the verdict obtained," *Chapman,* 386 U.S. at 24. Accordingly, *habeas* relief on these claims is unwarranted.

### C. Missing Witness Charge

As set forth below, the Court also rejects Jones's claim that *habeas* relief is appropriate because of the trial court's failure to issue a missing witness charge for parolee Gary Looney, who owned the house and stayed in the bedroom where the gun was found.

---

[8] To the extent that petitioner also contends that the admission of this testimony violated his rights under the Confrontation Clause, such claim is similarly rejected because the testimony was not offered for the truth of the matter asserted. *See United States v. Paulino,* 445 F.3d 211, 216 (2d Cir. 2006) ("It has long been the rule that '[s]o long as . . . statements are not presented for the truth of the matter asserted, but only to establish a context . . ., the defendant's Sixth Amendment rights are not transgressed.' Nothing in *Crawford v. Washington* is to the contrary.") (quoting *United States v. Barone,* 913 F.2d 46, 49) (citation omitted).

A "missing witness charge invites the jury to draw an adverse inference against a party that fails to call a witness whose 'production . . . is peculiarly within [its] power.'" *United States v. Gaskin*, 364 F.3d 438, 463 (2d Cir. 2004) (quoting *United States v. Mittelstaedt*, 31 F.3d 1208, 1216 (2d Cir. 1994)). Further, as the Second Circuit has explained, "[b]ecause we recognize that 'an aura of gamesmanship' frequently accompanies requests for missing witness charges, we afford [trial] judges considerable discretion in deciding when they should and should not be given." *Gaskin*, 364 F.3d at 463 (quoting *United States v. Torres*, 845 F.2d 1165, 1170-71 (2d Cir. 1988)); *see also Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992) (noting that decision to issue missing witness charge "lies in the sound discretion of the trial court") (citation and quotation marks omitted). Moreover, "[l]ike the failure to give any other jury instruction, the failure to issue a missing witness instruction does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the failure 'so infected the entire trial that the resulting conviction violated due process.'" *Kloskin v. Conway,* 501 F. Supp. 2d 429, 444 (W.D.N.Y. 2007) (quoting *Cupp v. Naughten,* 414 U.S. at 147)).

To obtain a missing witness charge under New York State law, a defendant must demonstrate three factors regarding the witness in question:

> (1) the witness had knowledge material to the trial; (2) the witness was expected to give noncumulative testimony favorable to the party against whom the charge is sought; and (3) the witness is available to the party who would be expected to call the witness.

*McCrone v. Brown*, No. 9:07-cv-00077, 2008 U.S. Dist. LEXIS 20830, at *27 (N.D.N.Y. Mar. 17, 2008) (citing *People v. Savinon*, 100 N.Y.2d 192 (N.Y. 2003)).[9]

As stated *supra*, the defense sought at trial to demonstrate that the gun recovered was not Jones's, but that of Looney, a parolee who lived at 22 Lake Drive. At the close of trial, defense counsel asked the trial court to issue a missing witness charge for Looney to explain the prosecutor's failure to call him as a witness at trial. (T.686-87.)

In opposition to this request, the prosecutor made the following points: (1) Looney did not witness any of the relevant events, *i.e.,* the pursuit of Jones and his throwing the handgun down in the bedroom (T.687-88); (2) in Looney's statement to the police, he "indicates that he never saw any guns; that by the time he came out of the room, defendant was already in custody, the gun was already placed in the room, so he can't add anything different than any of the other witnesses. . . ." (T.688); and (3) Looney was not in custody of the State of New York, but was on parole and under the same subpoena power as defense counsel (T.688).

---

[9] "The propriety of a state trial court's jury instructions is ordinarily not a matter that raises a federal question, but rather, is a matter of state law." *Brown v. Conway*, No. CV-06-3555, 2007 U.S. Dist. LEXIS 85924, at *11 (E.D.N.Y. Nov. 19, 2007). Thus, the Court has considered the missing witness charge issue under New York State law. However, for the reasons discussed *infra*, the trial court's failure to issue a missing witness charge also did not violate Jones's due process rights or any other right that arises under federal law.

17

The trial court then rejected the request for a missing witness charge, stating: "As to the missing witness charge, there's three tests here that have to be met here. Doesn't appear to be that Mr. Looney is in the control of the People and available to the party who failed to call him." (T.694-95.) On appeal, the Appellate Division found that "as the defendant failed to demonstrate that the witness would naturally be expected to provide testimony favorable to the prosecution, the trial court properly denied the request." *Jones*, 808 N.Y.S.2d at 85.[10]

Keeping in mind the sound discretion afforded to trial courts with respect to missing witness charges, the Court finds that the trial court did not abuse its discretion in denying Jones's request for such a charge under the circumstances of this case, and that the corresponding conclusion by the Appellate Division was not an erroneous application of New York State law. Specifically, the defense failed to provide any evidence that Looney would have given testimony favorable to the prosecutor, given that he was not present in the bedroom at the time of the arrest and that he indicated to police that he never saw any guns. Under these circumstances, the trial court properly exercised its discretion under New York State law not to issue a missing witness charge.

In any event, even if there was a violation of state law, there is no basis for concluding that such error was of such constitutional magnitude that it warrants *habeas* relief. It is entirely speculative to suggest that the prosecutor's failure to call him as a witness, or the failure by the court to give a missing witness charge, had any impact on the trial. *See, e.g., Toland v. Walsh*, No. 9:04-CV-0773, 2008 U.S. Dist. LEXIS 704, at *44-*45 (N.D.N.Y. Jan. 4, 2008) (denying *habeas* relief where possibility that missing witness would give favorable testimony was "based upon nothing other than mere conjecture" and "federal habeas relief cannot be granted upon claims that are rooted in speculation"); *Brown*, 2007 U.S. Dist. LEXIS 85924, at *12 (denying *habeas* relief in part because "failure to give a missing witness charge will rarely support reversal or habeas relief since reviewing courts recognize the aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense than any reviewing court") (citation and quotation marks omitted). Moreover, in his summation, petitioner's trial counsel noted that the prosecutor did not inform the jury that the gun was recovered in the bedroom and house of a parolee and that the defense had to bring those facts out in its case. (T.720-21.) Thus, by implying that the gun belonged to Looney and noting the prosecutor's failure to bring out this information, counsel further alleviated any potential error in the court's failure to issue a missing witness charge. *See, e.g., Brown v. Spitzer*, No. 05 Civ. 1553, 2007 U.S. Dist. LEXIS 61392, at *8 (E.D.N.Y. Aug. 21, 2007) ("[P]etitioner's trial counsel was granted the right to argue in closing that the jury should draw an adverse inference from the failure to call [the witness], for whatever that was worth, and the cases have recognized that counsel's closing argument as to an allegedly missing witness cures the failure to charge, if one would be required.") (citations omitted). In addition, *habeas* relief

---

[10] The Appellate Division found that the prosecutor had not preserved for appeal the arguments that (1) "defendant failed to establish that the uncalled witness had knowledge of a material issue; or (2) "[Looney] had no non-cumulative evidence to offer." *Jones*, 808 N.Y.S.2d at 85.

18

also would not be warranted on this ground given the compelling proof of defendant's guilt, discussed *supra*.

In sum, after careful review of the state court record, there is no basis for the Court to conclude in this case that the Appellate Division's rejection of the missing witness charge claim was erroneous under state law, much less that the court violated petitioner's federal due process rights by failing to give the charge. Thus, *habeas* relief on this ground is unwarranted.

### III. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Petitioner has failed to point to any State court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Accordingly, the instant *habeas* petition is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 7, 2008
Central Islip, New York

\* \* \*

The attorney for Jones is Steven Feldman, Esq., 300 Rabro Drive, Hauppauge, New York, 11788. The attorneys for Rivera are Guy Arcidiacono, Esq. and Karla Lato Esq. of the District Attorney's Office of Suffolk County, 200 Center Drive, Riverhead, New York, 11901.